UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INGRAM MICRO INC., <br> BRIGHTPOINT NORTH AMERICA, LP, <br><br> Plaintiffs, <br><br> v. <br><br> INFINITY GROUP ENTERPRISES, <br> JOHN J. PARKER <br>    a/k/a JASON PARKER, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:21-cv-00982-TWP-TAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**REPORT AND RECOMMENDATION
ON PENDING MOTIONS**

**I.     Introduction**

In this commercial collection case, Plaintiffs Ingram Micro Inc. and Brightpoint North America, LP allege that Defendants Infinity Group Enterprises and John J. Parker (also known as Jason Parker) ordered mobile devices on credit and then failed to pay Plaintiffs as promised. Pending before the Court are multiple motions to dismiss, a motion for prejudgment order of possession and attachment, and a motion to reduce the sequestered fund balance that Defendants have maintained since June. The Court discussed these motions with counsel during a December 7, 2021, status conference. Despite many disagreements, the parties agree all products at issue have been returned to Plaintiffs. Thus, an order of prejudgment possession would be futile, and forcing Defendants to continue to maintain a sequestered fund balance is unwarranted. Moreover, Plaintiffs set forth plausible claims against Infinity to survive the motion to dismiss hurdle. For these reasons, Parker's motion to dismiss the replevin claim against him individually

[Filing No. 17] and Defendants' motion to reduce the fund balance [Filing No. 80][1] should be granted, but the remaining motions [Filing No. 12; Filing No. 14; Filing No. 21] should be denied.

## II.     Background

Brightpoint is a Delaware limited partnership authorized to do business in Indiana. [Filing No. 1-2, at ECF p. 1.] Brightpoint is a wholly owned subsidiary of Ingram, a Delaware corporation. Infinity, a Nevada corporation, agreed to purchase and took delivery of certain cell phones, wireless tablets, and other wireless devices from Brightpoint for resale to consumers in Infinity's retail locations. The arrangement between Infinity and Brightpoint is set forth in the 2017 Sales and Credit Terms agreement, signed by Infinity's "President" Jason Parker[2]. [Filing No. 1-1, at ECF p. 21.] In that agreement, Infinity granted Brightpoint a security interest in all products sold by Brightpoint to Infinity. [Filing No. 1-1, at ECF p. 21.]

In July 2019, Infinity granted Ingram (Brightpoint's parent company) and its "divisions, affiliates and operating units" a security interest in all of Infinity's then-owned and after acquired "Equipment, Inventory, Accounts, Chattel Paper, Instrument [sic], Documents, Investment Property, Letters of Credit, Money, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts and General Intangibles" and all products of and proceeds from the same. [Filing No. 1-1, at ECF p. 22.] Parker signed the 2019 security agreement with the title of "Owner" as his relationship to Infinity. [Filing No. 1-1, at ECF p. 26.]

---

[1] While the magistrate judge could enter an order ruling on the motion to reduce fund balance [Filing No. 80] immediately, for simplicity, it is also treated as a referral for a Report and Recommendation.
[2] Parker also unconditionally guaranteed "the prompt payment and performance when due" of Infinity's obligations to Brightpoint and its affiliates in the "Unconditional Guaranty" executed on July 29, 2015. [Filing No. 1-1, at ECF p. 31.]

As of March 15, 2021, Infinity had failed to pay a total of 114 invoices to Brightpoint, totaling $905,971.81. [Filing No. 1-2, at ECF p. 5.] Thereafter, on March 19, 2021, Plaintiffs filed their complaint in Marion Superior Court against Defendants, who removed the case to this Court on April 21, 2021. [Filing No. 1.] Infinity responded by filing a motion to dismiss the claims asserted by Plaintiffs based on the 2019 security agreement between Infinity and Ingram under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. [Filing No. 12, at ECF p. 1.] In addition, Infinity filed a motion to dismiss the claims asserted by Ingram under Fed. R. Civ. P. 12(b)(6). [Filing No. 14.] Parker filed a motion to dismiss the replevin claim asserted by Plaintiffs against Parker pursuant to Fed. R. Civ. P. 12(b)(6). [Filing No. 17.]

On May 6, 2021, Brightpoint filed a motion for prejudgment order of possession and attachment or, in the alternative, for sequestration and expedited hearing. [Filing No. 21.] In June 2021, the Court ordered Infinity to maintain a fund balance in its financial accounts of at least $905,971.81 during the pendency of the briefing on the motion for prejudgment order of possession. [Filing No. 36.] Infinity represents to the Court that since that time, it has returned 1,040 phones and devises that it purchased from Brightpoint, which Infinity values at $598,781[3].

On August 10, 2021, the Court entered an order reducing the amount Infinity was required to maintain in its financial accounts to $318,416.97. [Filing No. 49.] Defendants made an additional payment to Plaintiffs of $141,670.97 on October 26, 2021. [Filing No. 80, at ECF p. 2.] Thus, on November 3, 2021, Defendants filed a motion to reduce fund balance, specifically requesting that the Court enter an order requiring Infinity to maintain a reduced fund balance in its financial accounts of $176,746 pending the Court's ruling on Defendants' motions

---

[3] Plaintiffs have different valuation and credit calculations, noted in their response to Defendants' motion to reduce fund balance and attached to that response as Exhibit A. [Filing No. 81.]

to dismiss. [Filing No. 80, at ECF p. 1.] Plaintiffs oppose Defendants' motion to reduce the fund balance, disputing Defendants' assertions in the motion.

The motions to dismiss, motion for prejudgment possession, and motion to reduce fund balance remain pending. The Court held a telephonic status conference with the parties on December 7, 2021. [Filing No. 86.] At that conference, the parties confirmed that all cell phone and mobile devices have been returned to Plaintiffs, and Plaintiffs have provided all the credits that they intend to provide for those products. Plaintiffs claim Defendants still owe $287,487.16, with interest accruing $82.66 per diem, plus additional collection costs incurred since November 3, 2021. [Filing No. 81, at ECF p. 4.] Accordingly, Plaintiffs argue that the Court should not reduce the sequestered balance at all. Defendants believe that they have provided payment to cover the full balance they owe, other than an outstanding $18,510, which they intend to provide.

## III.   Discussion

   A.   *Brightpoint's Motion for Prejudgment Order of Possession and Attachment, or alternatively for Sequestration and Expedited Hearing [Filing No. 21] and Defendants' Motion to Reduce Fund Balance [Filing No. 80]*

As noted above, during the December 7 telephonic status conference, the parties clarified their position on outstanding issues. Plaintiffs explained that their current position on Brightpoint's motion for prejudgment order of possession and attachment or, alternatively, sequestration [Filing No. 21] is that they seek a Court order requiring that Infinity maintain a balance of at least $287,487, plus interest and fees[4]. Thus, Plaintiffs oppose Defendants' motion to reduce the fund balance [Filing No. 80] and believe that it ought to remain at $318,416.97.

Given that Plaintiffs acknowledge that they have received all the physical devices at issue and now predominately seek a Court order requiring Infinity to continue to maintain a

---

[4] As Defendants' counsel noted at the most recent status conference, both sides have claims for interest and attorneys' fees.

4

sequestered fund balance to satisfy the remaining amount owed, the Court should not wade further into the issues of replevin and attachment laid out in the parties' briefing. Instead, the Court's focus should be on whether any funds need to remain sequestered.

The Court has required Infinity to maintain a fund balance in its financial accounts since June 2021—originally $905,971.81, but then on August 10, 2021, reduced to $318,416.97. [Filing No. 36; Filing No. 49.] Infinity has consistently followed the Court's orders and maintained the requisite balance. Now, other than $18,510 that Infinity acknowledges is still owed, Infinity believes that it has satisfied all outstanding obligations, so it seeks to have the fund balance eliminated, or at least reduced to $176,000. [Filing No. 80.]

Sequestration is an extraordinary remedy. *See, e.g., Fausse Riviere, L.L.C. v. Snyder*, 211 So.3d 1188, 1197 (La. App. 1 Cir. 2/15/17) ("The writ of sequestration is an extremely harsh remedy"). Indeed, while Brightpoint cited to Indiana Trial R. 64(a), which lists sequestration as a potential ancillary remedy available to a plaintiff, it also acknowledged that no Indiana cases have elaborated on the standards for sequestration. [Filing No. 21, at ECF p. 5.] Thus, Brightpoint cited to other authorities. *See, e.g., King v. Payan & Co.*, 18 Ark. 583, 587 (1857) ("Judicial garnishment at law is a creature of the statute which authorizes it; but the remedy by garnishment or sequestration, is one which has been exercised by the courts of chancery, we may say, immemorially, or at least from a very remote period.").

Understandably, Plaintiffs express concerns about Parker's actions, revealed in his deposition, regarding Parker transferring sums of Infinity's property to his personal trading account. However, at this point, this case simply boils down to a contractual dispute. The fact that Plaintiffs would take comfort in having a Court order in place securing the funds in dispute does not warrant departing from standard practice. Infinity has sufficiently met its obligation to

5

maintain a sequestered fund balance while the motion on prejudgment possession remained pending. All mobile devices at issue have now been returned, and all credits for those devices have been applied. While a dispute remains on the value of those returned devices, collection costs, and interest, Plaintiffs have not demonstrated that sequestration is appropriate and offer no legal argument that sequestration is an appropriate remedy in this case under Indiana law. If Plaintiffs prevail on their underlying claims, they can pursue the usual courses of action to recover any judgment.

Thus, the sequestration order has been in place long enough to serve its purpose. Accordingly, Plaintiffs' motion for prejudgment order of possession and attachment, or alternatively sequestration [Filing No. 21] should be denied. Once Defendants file a certification to the Court that they have paid Plaintiffs the additional $18,510 Defendants acknowledge they owe, the Court should vacate the order requiring Infinity to maintain a sequestered fund balance and grant Defendants' motion to reduce the fund balance [Filing No. 80].

    B.    *Motions to Dismiss*

        i.    *Infinity's 12(B)(2) Motion to Dismiss [12]*

Infinity argues this Court does not have personal jurisdiction to adjudicate Plaintiffs' claims that are based on the 2019 security agreement executed between Infinity and Ingram. [Filing No. 12.] When personal jurisdiction is challenged under Fed. R. Civ. P. 12(b)(2), "[t]he plaintiff bears the burden of establishing personal jurisdiction" over a defendant. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). If there are material facts in dispute regarding the Court's jurisdiction over a defendant, the Court holds an evidentiary hearing and the plaintiff must then "establish jurisdiction by a preponderance of the evidence." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Alternatively, the district court may

rule on a defendant's motion to dismiss solely based on submitted written materials, without an evidentiary hearing, as long as it resolves all factual disputes in the plaintiff's favor. *Id.* In such a case, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Id.*

In their complaint, Plaintiffs allege in relevant part that Ingram and Infinity entered into a security agreement on June 21, 2019. [Filing No. 1-2, at ECF p. 3.] The third and fourth claims in Plaintiffs' complaint are based on this 2019 security agreement, while the other three claims in the complaint are based on agreements executed by Brightpoint. The 2019 security agreement contains a forum selection clause providing that any action to enforce or arising under the 2019 security agreement "may be commenced, at the option of the secured party, in courts having suits within the state of New York[.]" [Filing No. 1-2, at ECF p. 18.] Infinity argues that the security agreement does not have a forum selection clause that permits disputes arising from it to be litigated in Indiana courts. [Filing No. 13, at ECF p. 2.]

Infinity's chief executive office is in Texas, and the phones and equipment Plaintiff Brightpoint sold to Infinity were shipped to Texas. Thus, Infinity argues that it is subject to the general jurisdiction of courts in Texas, not Indiana. [Filing No. 13, at ECF p. 1.] Defendant Infinity argues that Plaintiffs could have pursued their various claims in Texas, but instead relied on forum selection clauses to establish specific personal jurisdiction over Defendants in Indiana. Accordingly, Infinity claims that Plaintiffs have not established that this Court has personal jurisdiction over the claims asserted regarding the 2019 security agreement, executed by Plaintiff Ingram, because the agreement does not contain a forum selection clause that establishes personal jurisdiction in Indiana. [Filing No. 12, at ECF p. 1]

Plaintiffs maintain that Infinity conceded that this Court has personal jurisdiction over Plaintiffs' claims relating to the 2017 Sale and Credit Terms and the 2017 security interest, and

7

that this concession also results in this Court having personal jurisdiction over any other claims that arise out of a common nucleus of operative facts, including the 2019 security agreement. [Filing No. 57, at ECF p. 6.] Plaintiffs further argue that the 2019 security agreement cannot be considered a stand-alone document, because it secures the underlying debt obligations incurred under and governed by the sale and credit terms. [Filing No. 57, at ECF p. 8.] In addition, Plaintiffs argue that the "overlapping proof test" is also met, as the same proof and evidence is needed to establish that Infinity executed the agreements, ordered the product, and then failed to pay for the product as will apply to Plaintiffs' claims against Defendants under the 2017 Sale and Credit terms and the 2017 security agreement.

Plaintiffs' arguments are well taken. Viewing the facts in Plaintiffs' favor, the 2019 security agreement was logically related to and integrated with the parties' existing contractual relationship. Together with the pre-existing 2017 sale and credit terms and 2015 guaranty, the 2019 security agreement induced Ingram and Brightpoint to continue shipping product to Infinity on increased credit—specifically the product at issue that Infinity ordered on or after November 30, 2020. Furthermore, the 2019 security agreement secures the underlying debt obligations incurred under and governed by the 2017 sale and credit terms; thus, it cannot be considered as a stand-alone document. The documents are inextricably linked, given that an event of default under the 2019 agreement occurs when "any of the Obligations [i.e., the Sale and Credit terms] shall not be paid or performed when any such payment or performance shall become due." [Filing No. 1-1, at ECF p. 23.] There is a logical relationship between the various agreements, placement of product orders, and nonpayment of product.

Plaintiffs' "overlapping proof" argument is similarly persuasive. The evidence needed to establish that Infinity executed the agreements, ordered the product, and then failed to pay for the

8

product seemingly will apply to all of Plaintiffs' claims under the 2017 sales and credit terms and related 2017 security agreement.  As Plaintiffs argue, it is difficult to believe—almost illogical—that the parties expected to litigate claims to enforce a security interest and claims for breach of the underlying secured obligation in different proceedings and forums.

Moreover, the 2017 Sale and Credit Terms contains a forum selection clause specifically identifying courts within Indiana as the exclusive venue, but the 2019 security agreement does not provide for exclusive venue in New York.  The 2017 Sale and Credit Terms states:

> This Agreement shall be governed by and interpreted in accordance with the laws of the State of Indiana, United States of America; provided, however, that any and all disputes hereunder shall be decided exclusively be litigation in state or federal courts located within Marion County or the Southern District of Indiana, Indianapolis Division[.]

[Filing No. 1-2, at ECF p. 14.]  In comparison, the 2019 security agreement provides for a New York venue "at the option of the secured party" and uses less restrictive "may" language.  [Filing No. 1-2, at ECF p. 18.]

For all these reasons, Infinity's motion to dismiss under Fed. R. Civ. P. 12(B)(2) should be denied.

### B.     Infinity's 12(B)(6) Motion to dismiss [14]

Infinity also filed a motion to dismiss the claims asserted by Ingram under Fed. R. Civ. P. 12(B)(6).  Infinity argues that all of the claims alleged in Plaintiffs' complaint are based on a debt that is allegedly owed to Brightpoint, a wholly-owned subsidiary of Ingram, and Ingram has alleged no facts that would allow it to pursue a claim based on the debt allegedly owed to Brightpoint.  [Filing No. 14.]  Infinity contends that Ingram has not asserted any allegations that Infinity owes any debt to Ingram.  [Filing No. 15, at ECF p. 2.]  In addition, while Brightpoint's

9

claims arise from agreements noted above with choice of law provisions selecting Indiana law, Infinity argues that Ingram's claims are based on an agreement governed by New York law.

Under New York law, a parent corporation cannot generally file claims to recover damages for injuries suffered by their subsidiaries because they are separate legal entities. *See, e.g., Diesel Sys. Ltd. v. Yip Shing Diesel Eng'g Co.*, 861 F. Supp. 179, 181 (E.D.N.Y. 1994) ("A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined."); *Alexander & Alexander of New York, Inc. v. Fritzen*, 495 N.Y.S.2d 386, 388 (N.Y.A.D. 1 Dept 1985), *aff'd*, 503 N.E.2d 102 (N.Y. 1986) (recognizing general principles under New York law that "parent, subsidiary, or affiliated corporations are treated separately and independently and one will not be held liable for the contractual obligations of the other, unless it is shown there was an exercise of complete dominion and control"; and "one corporation will generally not have legal standing to exercise the rights of other associated corporations"); *Tate & Lyle Ingredients Americas, Inc. v. Whitefox Techs. USA, Inc.*, 949 N.Y.S.2d 375, 376 (N.Y.A.D. 1 Dept 2012) ("The general rule under New York law is that parent corporations may not enforce, or have enforced against them, terms of a contract, including forum selection clauses, signed by their separately existing subsidiaries."). Thus, Infinity argues that "Ingram's mere assertion that it is a parent corporation that issued Brightpoint's invoices does not give Ingram standing to assert any claims against Infinity based on a debt allegedly owed to Brightpoint." [Filing No. 15, at ECF p. 3.]

However, in July 2015, Defendant Parker signed an unconditional guaranty in favor of Brightpoint "and its affiliates" to guarantee Infinity's indebtedness to Plaintiffs. As Plaintiffs note, "affiliates" includes Brightpoint's parent, Ingram. [Filing No. 55, at ECF p. 1.] The 2017 sale and credit terms between Infinity and Brightpoint granted Brightpoint a security interest in

10

all products sold by Brightpoint to Infinity. In June 2019, Infinity executed a separate security agreement in favor of Ingram and "its divisions, affiliates and operating units"—which includes subsidiary Brightpoint. Moreover, Parker signed the 2019 security agreement as the "owner" of Infinity. Thus, Plaintiffs persuasively argue that the 2019 security agreement supplemented and expanded the scope of the 2017 security interest.

Moreover, while the 2017 security interest was limited to "all products sold" to Infinity, the 2019 security agreement granted parent company Ingram (and its divisions, affiliates, and operating units) a security interest in "all Equipment, Inventory, Accounts, Chattel Paper, Instrument, Documents, Investment Property, Letters of Credit Money, Letters of Credit Rights, Commercial Tort Claims, Deposit Accounts and General Intangibles[.]") The 2019 security agreement defines the "Secured Party" as "Ingram Micro, Inc. including its divisions, affiliates and operating units." [Filing No. 1-1, at ECF p. 22.] Thus, the 2019 security agreement reflects that Infinity granted a security interest in its assets to both Ingram and Brightpoint to secure any obligation Infinity owed to either Ingram or Brightpoint. Furthermore, under the 2019 security agreement, Infinity's default of any payment obligations to an Ingram affiliate constitutes a default of its security agreement to Ingram. Plaintiffs point out that after the execution of the 2019 security agreement, Infinity continued to place product orders, and Brightpoint continued to extend credit to Infinity, including more than $365,000 worth of product in January 2021. As noted above, the earliest orders at issue in this case were placed on or after November 30, 2020. Infinity allegedly failed to pay its payment obligations to Brightpoint, which amounts to a default under the 2019 security agreement.

Plaintiffs maintain that Infinity "incorrectly and misleadingly" asserts that Ingram's claims are based solely on the allegation that Brightpoint is a wholly-owned subsidiary. [Filing

11

No. 55, at ECF p. 5.] As Plaintiffs reiterate, Ingram's claims are based on its own direct contract with Infinity, as evidenced by the 2019 security agreement, to which Ingram is a party. While it is true that under New York law, parent companies cannot enforce claims or rights that belong solely to their subsidiaries, the cases cited by Infinity involve parent companies who were nonparties to the subject contract. *See, e.g., Diesel Sys. Ltd.*, 861 F. Supp. at 181 (New York company could not assert claim for tortious interference with a distribution agreement because the only parties to the contract were sister corporation in Hong Kong and third parties ); *Alexander & Alexander of New York, Inc.*, 495 N.Y.S.2d at 388 (holding that since the plaintiff corporation (A&A) and sister corporation (AGR) were separate and distinct entities, "there is no basis upon which A&A may interpose a claim for tortious interference with the employment relationships between AGR and its employees"); *cf. Tate & Lyle Ingredients Americas, Inc.*, 949 N.Y.S.2d at 376 (after noting general NY law that parent corporations cannot enforce contracts signed by separately existing subsidiaries, described three circumstances in which a nonsignatory can enforce a forum selection clause: (1) a third-party beneficiary of a contract may enforce a forum selection clause; (2) parties to an integrated, global transaction, who are not signatories to a specific agreement but may nonetheless benefit from a forum selection clause in one of the other agreements; or (3) when a nonparty is closely related to one of the signatories).

These cases are largely inapposite here, where Ingram is a named party to the 2019 security agreement with Infinity. The security agreement clearly gives Ingram standing to enforce its rights as a party to that agreement. Moreover, under New York law, a secured party may enforce a security interest against a debt when: "(1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) . . . (A) the debtor has authenticated a security agreement that provides a description of the

collateral[.]" N.Y. U.C.C. Law § 9-203(b). Infinity granted Ingram, as secured party under the 2019 security agreement, a security interest in all proceeds and products of "all Equipment, Inventory, Accounts, Chattel paper, Instrument, Documents, Investment Property, Letters of Credit Money, Letter of Credit Rights, Commercial Tort Claims, Deposit Accounts and General Intangibles." Accordingly, Ingram set forth a plausible claim against Infinity, so Infinity's motion to dismiss Ingram's claims pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

        C.      *Motion to dismiss Replevin Claim [17]*

Parker seeks dismissal under Fed. R. Civ. P. 12(b)(6) of Plaintiffs' replevin claim as it relates to him individually. [Filing No. 17.] Parker argues that Plaintiffs have not alleged that he is unlawfully detaining or holding possession of Infinity's property, so Plaintiffs' replevin claims against Parker should be dismissed. Plaintiffs clarify in response that "the only relief Ingram seeks against Parker in Count 4 is to 'answer for the current whereabouts of the Collateral, and be ordered to assemble the Collateral.' " [Filing No. 55, at ECF p. 9 (quoting Filing No. 1-1, at ECF p. 18).] Parker signed the relevant documents as "President" and "Owner" of Infinity. Thus, it is reasonable to conclude he has control over Infinity and signatory authority of any proceeds in a bank account titled to Infinity. However, at this point, Plaintiffs' claim for replevin against Parker is moot, as Plaintiffs have since informed the Court that all the physical devices have been returned. Moreover, as noted above, the Court should no longer require Infinity to maintain a sequestered fund balance. For all these reasons, Parker's motion to dismiss Count IV's replevin claim as it relates to Parker individually [Filing No. 17] should granted.[5]

---

[5] However, Parker remains a Defendant in this case. For instance, Count V is against Parker for breach of the 2015 guaranty, and Parker raised no arguments about this claim in his motion to dismiss.

## IV. Conclusion

For reasons noted above, Plaintiffs' motion for order of possession and/or attachment, or in the alternative sequestration [Filing No. 21] and Infinity's motions to dismiss [Filing No. 12; Filing No. 14] should be denied. However, Parker's motion to dismiss [Filing No. 17] and Defendants' motion to reduce fund balance [Filing No. 80] should be granted. Defendants should be ordered to certify to the Court that they have paid Plaintiffs the additional $18,510, whereupon the Court should enter an order vacating its earlier order requiring Infinity to maintain a sequestered fund balance.

Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 12/20/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email